IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DEBBIE RUNZI,<br>on behalf of herself and all others<br>similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>SYNCHRONY BANK,<br>f/k/a GE Capital Retail Bank,<br><br>    Defendant. | Civil Action File No.<br><br>3:23-cv-00129-TCB |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANT'S MOTION TO FORCE ARBITRATION**

**INTRODUCTION AND STATEMENT OF FACTS**

Plaintiff Debbie Runzi brought this action for damages and injunctive relief against Synchrony Bank ("Synchrony") to stop Defendant's continued use of artificial and prerecorded voices to call random parties, such as Plaintiff, to collect debts owed by persons completely unknown to the called parties.[1]

In this case, Synchrony called Ms. Runzi regarding a Brandsmart account

---

[1] Synchrony has already paid almost $10,000,000 dollars to resolve similar claims in two prior cases, yet it continues to make such calls. *See* Doc. 11, ¶¶ 3-6 *citing Abdeljalil v. General Electric Capital Corp.*, No. 3:12-cv-02078-JAH-MDD, dkt. 164 (S.D.Cal. Dec. 22, 2016) (Final Approval Order); *Lucas v. Synchrony Bank*, No. 4:21-cv-00070, Dkt. 55 (N.D.Ind. (Apr. 25, 2023) (Final Approval Order).

1

of a third-party unknown to Plaintiff. *See* Decl. Debbie Runzi, ¶¶ 4-7. Ms. Runzi does not have a Brandsmart account, nor does she know "Matthias O," the accountholder whose account Synchrony was trying to collect. *Id.* at ¶¶ 6-7. After being unable to navigate Synchrony's telephone system, in part because she was not the accountholder of the Brandsmart account, Ms. Runzi mailed Synchrony a letter demanding that the calls cease and informing it that it had the wrong number. *Id.* at ¶¶ 8-10, Exh. A. Notwithstanding the letter, Synchrony continued to call.

The Complaint is clear that the calls at issue relate to the collection of an account belonging to a person unknown to Plaintiff, and Synchrony has recognized this itself. *See,* Doc. 12-2, Nayman Decl. at ¶¶ 11 (averring that Synchrony received the telephone number from a different applicant).

Synchrony's calls to Ms. Runzi's cellular telephone number using artificial or prerecorded voice messages regarding Matthias O's Brandsmart account has absolutely nothing to do with Plaintiff's Sam's Club Mastercard.[2] Synchrony's attempt to equate the third-party Brandsmart card with Plaintiff's Sam's Club card is nonsensical. Moreover, Synchrony elected not to attach or authenticate

---

[2] According to the Nayman Declaration, Synchrony began calling Ms. Runzi's cell phone number because the third-party applicant provided the telephone number, not because of any confusion. *See* Doc. 12-2, Nayman Decl. at ¶ 11.

2

the records upon which its conclusory testimony allegedly relies.

Plaintiff's claims are not within the scope of the Federal Arbitration Act because the controversy does not "aris[e] out of such contract or transaction" containing an agreement to arbitrate. *See* 9 U.S.C. § 2. Accordingly, Defendant's motion to force arbitration must be denied.

## ARGUMENT AND AUTHORITY

### I.     Only Admissible Evidence may be Considered on a Motion to Compel.

In considering a motion to compel arbitration, courts in the Eleventh Circuit apply a summary judgment-like standard. *See Bazemore v. Jefferson Capital Systems, LLC*, 827 F. 3d 1325, 1333 (11th Cir. 2016). "[A] district court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if 'there is no genuine dispute as to any material fact' concerning the formation of such an agreement. Fed. R. Civ. P. 56(a)." *Id.* "A dispute is not "genuine" if it is unsupported by the evidence or is created by evidence that is "merely colorable" or "not significantly probative." *Id. quoting Baloco v. Drummond Co.*, 767 F.3d 1229, 1246 (11th Cir. 2014) (internal quotes removed).

"Statements by counsel in briefs are not evidence[.]" *Travaglio v. Am. Expres Co.*, 735 F. 3d 1266, 1270 (11th Cir. 2013). "Brief, conclusory assertion[s]" in affidavits fare no better. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without

3

specific supporting facts have no probative value."). Synchrony's Declaration does not support the statements in its brief, and its motion fails to live up to the evidentiary burden required for judgment on the arbitration question. *See Bazemore* at 1333.

Here, Defendant elected to rely upon a 13 paragraph business records declaration, which contains only one authenticated exhibit. *See* Doc. 12-2, Nayman Decl. Paragraphs 1 through 4 of the Declaration lay the foundation for the admission of business records. Paragraphs 5 through 8 seek to authenticate Exhibit A, the card agreement governing Plaintiff's Sam's Club Mastercard account. Plaintiff does not object to paragraphs 1-8 or Exhibit A.

Paragraph 10, however, testifies as to the content of a remittance slip which is not in the record and is not attached to or authenticated by the Declaration. Paragraph 11 conclusory avers that "[o]n or about December 8, 2022, Synchrony received an application for a different applicant that also provided the same phone number, 678-707-3631, who became an accountholder in Synchrony's system (the 'Different Accountholder')". Yet again, the application upon which this averment relies is neither authenticated nor attached to the Declaration.

Paragraph 12 avers that "[o]n or about February 18, 2023, after receiving

Plaintiff's written request to cease calling her, Synchrony located her Account and placed a cease and desist notation on her Account." Again, the business records supporting this averment are not provided with the Declaration. Finally, paragraph 13 conclusory avers that "[l]ater, Synchrony became aware that Plaintiff's phone number was also associated with the Different Accountholder's account. Accordingly, at that time, Synchrony removed the phone number from the Different Accountholder's account and ceased calling that phone number." Again, the Declaration does not provide any underlying business record upon which this averment is based, and it is conclusory with respect to how Synchrony "became aware" and the time and manner in which it happened.

Springing from this short declaration, Synchrony attempts to introduce several *additional* facts through arguments in its brief. On page 2 of its brief, counsel argues that "the present *dispute arises because* (through no fault of Synchrony) both Plaintiff and another accountholder near contemporaneously provided the same telephone number to Synchrony for communications about their respective accounts." Doc. 12-1, p. 2 (*emphasis* added). However, the Nayman Declaration never avers that Plaintiff's Sam's Club account was the *cause* of Synchrony's decision to place calls with respect to the third person's Brandsmart account. *See* Nayman Decl. Defendant's brief then argues that "the

5

alleged confusion between the two at accounts at a minimum relates 'indirectly' to the account that is indisputably Plaintiff's[.]" Doc. 12-1, p. 2. But again, the Nayman Declaration never avers any *actual* confusion, nor could it given that Ms. Runzi's cease and desist letter clearly explained that she was receiving calls intended for someone other than herself. Sidestepping this fact, the Nayman declaration merely avers that the phone number was separately provided with respect to both such accounts. Nayman Decl. at ¶¶ 10-11.

Any such confusion would not make sense in the context of these claims anyway. The conduct at issue in this case is the placement of telephone calls to Plaintiff's cellular telephone number using an artificial or prerecorded voice regarding the account of a third-party unknown to Plaintiff. *See Breslow v. Wells Fargo Bank, NA*, 857 F. Supp. 2d 1316 (S.D.Fla. 2012) ("[T]o demonstrate a violation of the TCPA, the Plaintiffs need only show that [Defendant] called a number assigned to a cellular telephone service using [a] prerecorded voice.") *aff'd*, 755 F.3d 1265 (11th Cir. 2014). Assuming the averments of the Declaration as true, which Plaintiff disputes,[3] the reason Synchrony called Plaintiff was

---

[3] Plaintiff disputes the conclusory assertion that such third-party ever did, in fact, provide Plaintiff's telephone number. The Declaration does not include the application to support this assertion, relying instead on a mere conclusory averment based on a review of records not submitted. The more likely scenario, if any, would be that a Brandsmart employee, as the agent processing the transaction behalf of Synchrony, miskeyed the telephone number that would

6

because a third-party provided the telephone number to Synchrony when opening a Brandmsart account. That fact alone caused Synchrony to place the calls without regard to whether Plaintiff *also* had an account through a different partner company. Any such confusion in the processing of Plaintiff's cease communications letter, which the Declaration never avers occurred, is *irrelevant* to the illegal calls that preceded the letter, and it was not the *cause* of the calls that came afterward. And again: "confusion" on Synchrony's part is implausible given that it is clear from Plaintiff letter (Declaration, Exh. A) that the calls had nothing to do with any account of Plaintiff.

Accordingly, this Court should disregard factual assertions made in Defendant's brief that are not supported by the Declaration, and it should disregard the conclusory averments of the Declaration that are not supported by the underlying business records from which they are based. "[T]estimony regarding the contents of business records, unsupported by the records themselves, by one without personal knowledge of the facts constitutes inadmissible hearsay." *FRT 2011-1 Trust v. eHealthscreen, LLC*, No. 13-107, 2016 WL 1595392, at *14 (S.D. Ga. Apr. 19, 2016). The Committee Notes to Rule 56 similarly makes clear that a party that bases a declaration upon review of

---

have been provided at the point of sale when the account was created.

documents must attach those documents to its declaration:

> Subdivision (c)(1)(A) describes the familiar record materials commonly relied upon and requires that the movant cite the particular parts of the materials that support its fact positions. Materials that are not yet in the record — including materials referred to in an affidavit or declaration — must be placed in the record.

2010 Committee Notes to Fed. R. Civ. P. 56(c)(1)(A). Because arbitration motions are to be considered under a summary judgment standard, *Bazemore*, 827 F. 3d at 1333, failure to comport with this requirement renders the declarant's statements based upon documents that were not placed in the record inadmissible. Rule 56 protects non-movants from such unsupported statements: "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). "The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. There is no need to make a separate motion to strike." 2010 Committee Note to Fed. R. Civ. P. 56(c)(2). Plaintiff contests that admissibility of these statements.

## II.    Arbitration Generally.

"The FAA [Federal Arbitration Act] reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010).  "The FAA thereby places arbitration agreements on an equal

footing with other contracts... and requires courts to enforce them according to their terms... Like other contracts, however, they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Rent-A-Center*, 130 S. Ct. at 2776 (internal citations omitted).

Synchrony attempts to invoke the *Moses H. Cone* presumption in favor of arbitration. See Doc. 12-2, pp. 10, 14-16 (arguing that disputes are presumptively within the scope of an arbitration agreement) *citing Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983). Synchrony omits, however, that the FAA's *Moses H. Cone* presumption **does not apply** to disputes outside the FAA's coverage. *See Calderon v. Sixt Rent a Car, LLC*, 5 F. 4th 1204, 1212-14 (11th Cir. 2021) (When a dispute does not arise out of the contract or transaction containing the agreement to arbitrate, the FAA, including the *Moses H. Cone* presumption, does not apply.).[4]

Because this dispute does not arise from Plaintiff's Sam's Club Mastercard account, the FAA does not apply to this dispute. 9 U.S.C. § 2; *Calderon* at 1212-14. Because section 2 of the FAA does not apply to this dispute, the Court lacks the power under sections 3 and 4 to stay this action and compel arbitration. *See New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 537-38 (2019) (holding that the powers of 9

---

[4] Defendant does not address *Calderon*, which is controlling precedent on this issue, in its brief.

U.S.C. §§ 3 & 4 to stay litigation and compel arbitration **only** apply when the contract falls within the confines of **both** sections 1 & 2 of the FAA.).

### III.     This Dispute Does Not Arise Out of the Sam's Club Account.

The Federal Arbitration Act's primary substantive provision explicitly limits the requirement to arbitrate disputes to those disputes *arising out of* the underlying contract or transaction.

> A written provision in... a contract evidencing a transaction involving commerce to settle by arbitration *a controversy thereafter arising out of such contract or transaction,* or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing *controversy arising out of such a contract, transaction, or refusal*, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2 (*emphasis* added). *See also Calderon* at 1213 ("[T]he FAA's 'arising out of' language means that it applies only when the dispute has a sufficient 'nexus' to the underlying contract[.]") *citing Infinite Arbitration Clauses,* 168 U. Pa. L. Rev. 633, 643, 678-80 (2020). Moreover, the purported arbitration agreement itself is limited to claims that "directly or indirectly arises from or relates to your account, your account Agreement or our relationship[.]"Doc. 12-2, p. 11, Exh A.

"[T]he term 'arising out of' is 'broad, but it is not all encompassing.'" *Calderon* at 1212 *quoting Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011). "A dispute 'does not arise out of or in connection with a contract' for

the purposes of arbitration 'just because the dispute would not have arisen if the contract had never existed.'" *Calderon* at 1212-13 *quoting Int'l Underwriters v. Triple I: Int'l Inv. Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008). "Rather, when determining whether a 'dispute "arises out of" ... an underlying contract' for arbitration purposes, 'we generally consider whether the dispute in question was an immediate, foreseeable result of the performance of contractual duties.'" *Calderon* at 1213 *quoting Hearn v. Comcast Cable Comm'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021).

Plaintiff's claims in this case are not related to her account, the agreement, or any other agreement or relationship she had with Defendant. They do not arise out of her or Synchrony's contractual duties with respect to her Sam's Club Mastercard account. The claims raised in this lawsuit arise from telephone calls Synchrony made to collect on an unknown person's Brandsmart account, purportedly because *that person* provided Defendant with Plaintiff's telephone number.

The agreement to arbitrate in Plaintiff's Sam's Club Mastercard account agreement does not give Defendant a right to require arbitration of disputes wholly unrelated to that agreement or that relationship. *See Klay v. All Defendants*, 389 F.3d 1191, 1195 (11th Cir. 2004) ("[B]road arbitration clauses cannot be

extended to compel parties to arbitrate disputes they have not agreed to arbitrate."). The Tenth Circuit has noted:

> For example, if two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract. In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship.

*Coors Brewing Co. v. Molson Breweries*, 51 F. 3d 1511, 1516 (10th Cir. 1995). In another TCPA case, the Southern District of California held that an arbitration clause so broad would be unenforceable, otherwise "'absurd results [would] ensue[.]'" *In re Jiffy Lube Intern., Inc., Text Spam Litig.*, 847 F.Supp. 2d 1253 (S.D.Cal. 2012) *quoting Smith v. Steinkamp*, 318 F.3d 775, 777 (7th Cir. 2003) (noting that an arbitration clause could not reach wrongful death or conversion claims years after the last transaction).

Synchrony is asking this court to read the contract to be so broad as to reach the "absurd results" decried in *Jiffy Lube*, *Steinkemp*, and *Coors*. Neither the plain language of the FAA nor the arbitration agreement reach this result. Put simply, it would be absurd for Plaintiff to be deemed to have agreed to arbitrate claims that have nothing to do with her account, but relate instead to a separate account with a separate alleged contract between Synchrony and a person unknown to Plaintiff.

### IV. Absent FAA Coverage, the Arbitration Agreement is unenforceable.

Because this dispute does not arise out of the Sam's Club account, it does not fall within Section 2 of the Federal Arbitration Act. 9 U.S.C. § 2; *Calderon* at 1212-14; *Revitch v. DIRECTV, LLC*, 977 F.3d 713, 721-24 (9th Cir. 2020) (O'Scannlain, Concurring). "[T]o invoke its statutory powers under §§ 3 and 4 [of the FAA] to stay litigation and compel arbitration according to a contract's terms, a court must first know whether the contract itself falls within or beyond the boundaries of §§ 1 and 2. The parties' private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the Act authorizes a court to stay litigation and send the parties to an arbitral forum." *See New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 537-38 (2019).

While the antecedent statutory provision at issue in *New Prime* was Section 1's carveout of transportation workers, *New Prime*'s holding explicitly applies to Section 2 as well. *See New Prime* at 537 (citing Section 2 as an "antecedent statutory provision[] that limit[s] the scope of the court's powers under §§ 3 and 4"). "'Sections 1, 2, and 3 [and 4] are integral parts of a whole.... [Sections] 1 and 2 define the field in which Congress was legislating,' and §§ 3 and 4 apply only to contracts covered by those provisions." *Id.* at 538 *quoting Bernhardt v. Polygraphic Co. of America,* 350 U.S. 198, 201-202 (1956).

Nor is there authority outside the FAA to compel arbitration of this

13

dispute. The Georgia Constitution's preservation of the right to a trial by jury is much broader than the federal Seventh Amendment, insofar as it sets forth the public policy of the State of Georgia that pre-litigation contractual jury trial waivers are not enforceable in Georgia. *Bank South v. Howard*, 264 Ga. 339, 444 S.E.2d 799 (1994). *See also Ekereke v. Obong*, 462 S.E.2d 372, 373, 265 Ga. 728 (1) (1995) (distinguishing a consent order to send *existing* claims to arbitration from pre-litigation waivers).

Section 2's command that arbitration agreements "shall be valid, irrevocable, and enforceable" preempts "state-law rules that stand as an obstacle" to the FAA's goals. *At&t Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1748 (2011). Because this dispute falls outside the purview of the FAA, however, the Georgia public policy prohibiting pre-litigation jury trial waivers survives. While Defendant invokes Utah law in its brief, choice of law provisions which would operate to avoid the public policy of the State of Georgia are invalid and unenforceable. *Moon v. CSA-Credit Solutions of America, Inc.*, 696 S.E.2d 486, 488, 304 Ga. App. 555 (2010). Accordingly, there can be no grounds to compel arbitration of a dispute that falls outside the purview of the Federal Arbitration Act.

V.  **Conclusion.**

Plaintiff's claims regarding calls to collect the accounts of a third person

unknown to her have nothing to do with her Sam's Club Mastercard account. Under the plain language of the FAA, Defendants' motion must be denied. 9 U.S.C. § 2; *Calderon* at 1212-14. *See also New Prime, Inc. v. Oliveira*, 139 S. Ct. 532, 537-38 (2019) (holding that the powers of 9 U.S.C. §§ 3 & 4 to stay litigation and compel arbitration only apply when the contract falls within the confines of both sections 1 & 2 of the FAA.).

Respectfully submitted,

**SKAAR & FEAGLE, LLP**

by:   */s/ Justin T. Holcombe*
Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF COMPLIANCE WITH LR 5.1B & 7.1D, NDGa.

Pursuant to LR 7.1D, NDGa., I certify that this document has been prepared with one of the font and point selections approved by the court in LR 5.1B, to wit: Book Antiqua, 13 point.

**SKAAR & FEAGLE, LLP**

by: */s/ Justin T. Holcombe*
Justin T. Holcombe
Georgia Bar No. 552100
jholcombe@skaarandfeagle.com
133 Mirramont Lake Drive
Woodstock, GA 30189
770 / 427-5600
404 / 601-1855 fax